UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Joseph Hunsperger, | ) | CASE NO. 5:22-cv-00326 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Tuscarawas County, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

This matter comes before the Court on a motion for summary judgment filed by the Tuscarawas County Defendants.[1] Doc. 21. Plaintiff Joseph Hunsperger has opposed the motion, and Defendants have replied in support. Upon review, the motion for summary judgment is GRANTED.

I. **FACTS**

Hunsperger entered the Tuscarawas County Jail on February 6, 2021. After being arrested and subsequently denied bond, he was ordered to be held in jail until sentencing on April 23, 2021. On March 2, 2021, at 7:20 a.m., Hunsperger reported to the medical department that he felt a knot in his stomach accompanying an upset stomach and stated he had dry heaves starting around 2:00 a.m. and little or no bowel movement for three days. The staff reported his sheets were wet and that Hunsperger stated he was cold. His vital signs were within normal limits, his abdomen was soft with bowel sounds present in all four quadrants, and no rebound tenderness was present. No sweating at the time was noted. He asked for something to help with constipation and 30 milliliters of milk of magnesia was given.

---

[1] These defendants include Tuscarawas County, Dr. David Burrier, and Michelle Scott.

At about 1:15 p.m. that same day, he reported to the medical department and stated he had an increase in right lateral upper abdominal pain. Hunsperger stated he vomited the milk of magnesia he was given earlier, and he refused lunch. He denied back pain and reported no bowel movement. His urine was cloudy, but a urinalysis dipstick test was within normal limits. At 1:22 p.m., Hunsperger was moved to Booking on Administrative Segregation so monitoring could be easier.

While Nurse Scott initially felt that Hunsperger would need to see Dr. Burrier the next day after the 1:15 p.m. visit, her opinion changed because Hunsperger allegedly reported to corrections staff that he was feeling better. At 8:58 p.m., on March 2, Hunsperger was moved back to general population at his request because he wanted the Commissary to be available to him.

On March 3, 2021, at 10:24 p.m., Hunsperger was brought to the medical department for a vitals check. His temperature was 99.9, and he complained of generalized abdominal pain. EMT Jay Fisher ordered a dose of milk of magnesia for suspected constipation.

On March 4, 2021, at 10:40 a.m., Hunsperger was brought to the medical department complaining of pain in his right mid-abdomen and his vital signs were within normal limits. He stated he had no bowel movement for three days and that he had not eaten even though he was issued the dose of milk of magnesia the previous day. Before visiting the medical department, his vitals were checked and found to be within normal limits. A urine screen was conducted and was negative for blood and white blood cells that are typically associated with infectious processes. He was transferred to booking for further monitoring and prescribed clear liquids for 24 hours and no commissary. He advised the medical staff that the corrections officers were liars. He had a negative urine screen and although no vomiting was reported, he did complain of nausea.

On March 5, 2021, at 10:14 a.m., Hunsperger continued to complain of abdominal pain and visited the medical department for a K-U-B (Kidney-Ureter-Bladder) x-ray suggested by Fisher, approved by Dr. Burrier, and conducted by Steel Valley Portable X-Ray Service.

The radiologist reported that the x-ray indicated that Hunsperger could have a small bowel obstruction or peritonitis. At about 12:03 p.m., the medical department was advised of the results and told that Hunsperger would likely need to go to the hospital.

Upon report of this finding to the jail, Hunsperger was transported to Union Hospital Emergency Room. The judge discharged Hunsperger from custody upon his admission to Union Hospital. He was admitted to the Emergency Room at about 1:04 p.m. where he was diagnosed with a ruptured appendix and treated accordingly.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id*.  Likewise, the moving party's burden of production "may be discharged by 'showing' – that

is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III.     ANALYSIS

**A. Claims Against Michelle Scott**

1. <u>Deliberate Indifference</u>

The Sixth Circuit has explained the proper test for a pretrial detainee making a deliberate indifference claim as follows:

> What then is required to establish deliberate indifference in this context? Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836 (describing, and rejecting as inapplicable to Eighth Amendment deliberate-indifference claims, the civil standard for recklessness). A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (*en banc*); *see Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."); *Griffith*, 975 F.3d at 589 (Clay, J., concurring in part and dissenting in part) (explaining that a pretrial detainee must prove that the defendant acted "intentionally to ignore [her] serious medical need or recklessly failed to act with reasonable care to mitigate the risk that the serious medical need posed to the pretrial detainee, even though a reasonable official in the defendant's position would have known, or should have known, that the serious medical need posed an excessive risk to the pretrial detainee's health or safety").

*Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596–97 (6th Cir. 2021)

There is no evidence in the record that Nurse Scott acted with reckless disregard in her treatment of Hunsperger. Instead, the evidence indicates that during each interaction that Nurse Scott had with Hunsperger, she gave him what she believed to be the appropriate remedy for the symptoms he displayed. In Nurse Scott's first interaction with Hunsperger, she was made aware of the complaints of pain in his abdomen, that he had no bowel movement for several days, and that he had a loss of appetite. Accordingly, she gave him a dose of milk of magnesia to help with

what she believed to be standard constipation. Nurse Scott was given direction to inform Dr. Burrier of anything she believed to be serious issues.

While it is clear that Nurse Scott was aware of Hunsperger's symptoms and took initial steps to address them, the critical inquiry centers on whether Nurse Scott acted with reckless disregard by failing to respond adequately to the evolving severity of Hunsperger's condition. The record indicates that Nurse Scott's assessment of Hunsperger's condition evolved over time, initially recommending further evaluation by a physician until Nurse Scott was informed by a CO that Hunsberger reported he was feeling better and asked to be moved back to general population. With that information, Nurse Scott removed Hunsperger's file from the pile of inmates who were scheduled to see Dr. Burrier. Further, urinalysis results showed no signs of infection or other serious medical issues.

Nurse Scott's decision-making process does not demonstrate reckless disregard. In fact, it is questionable whether her actions even constitute medical negligence. Nurse Scott's treatment and recommendations evolved alongside Hunsperger's worsening condition.  For that matter, even an x-ray read by a radiologist did not definitely demonstrate Hunsperger's ultimate ailment.  As such, it cannot be said that Nurse Scott's actions were done with reckless disregard to Hunsperger's condition. Accordingly, Hunsperger's federal claim against the Michelle Scott fails as a matter of law.

**B. Claims Against Dr. David Burrier**

1. <u>Deliberate Indifference</u>

Hunsperger similarly contends that Dr. Burrier, as the overseeing physician, is responsible for Hunsperger's medical care and that he demonstrated deliberate indifference by failing to

adequately respond to Hunsperger's escalating symptoms, ultimately resulting in a ruptured appendix.

Upon being informed of Hunsperger's condition, Dr. Burrier intervened on March 5, 2021, when he approved a Kidney-Ureter-Bladder x-ray to determine whether Hunsperger had a small bowel obstruction. It was this procedure that ultimately led to Hunsperger being sent to the emergency room. These appear to be the sum total of Dr. Burrier's actions with respect to Hunsperger. As such, it cannot be said that he acted with reckless disregard.[2]

**C. Claims Against Tuscarawas County and its Commissioners**

1. <u>Failure to Adequately Train and Supervise</u>

Having found above that Hunsperger failed to demonstrate a violation of his constitutional rights, it follows that his claim for insufficient policies and/or training, must fail as well. "To impose § 1983 liability on a municipality or local governmental entity, plaintiff must show that an officially executed policy, or the toleration of a custom, resulted in a constitutional deprivation." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). "Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself[.]" *Kraemer v. Luttrell*, 189 Fed.Appx. 361, 366 (6th Cir. 2006). Therefore, the finding that a constitutional violation occurred is axiomatic to analyzing whether the policy at issue resulted in the constitutional violation. *Thurmond v. County of Wayne*, 447 Fed.Appx. 643, 651 (6th Cir. 2011). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an

---

[2] The remainder of Hunsperger's argument with respect to Dr. Burrier revolves around allegations of his failure to train and/or supervise Nurse Scott. Those claims are addressed below.

independent constitutional violation. *See Monell*, 436 U.S. at 694 (involving a policy that was 'the moving force of the constitutional violation'); *see also City of Canton v. Harris*, 489 U.S. 378 (1989) (involving a failure to train municipal employees that led to the constitutional injury)." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Smith v. Packnett,* 339 F. App'x 389, 393 n.1 (5th Cir. 2009) (Explaining that "the failure to train an employee is not itself a violation of the Constitution; it is instead a basis for holding an employer liable when an employee violates the Constitution."); *Galka v. Willaims*, 2020 WL 7046816 at *2 (N.D. Ohio 2020) ("Failure to train is not a freestanding cause of action," but rather one of the ways in which a supervisor or municipality may be held liable in a civil rights action for the constitutional violations of employees."). Having found no underlying constitutional violation, it follows that any federal claim for failure to train and/or supervise cannot succeed.

## IV.     CONCLUSION

Defendants' motion for summary judgment is GRANTED on Hunsperger's federal claims. Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). There is no basis to depart from this general rule here, and the Court declines to exercise supplemental jurisdiction over Hunsperger's remaining state-law claims. All federal claims in the complaint have been resolved and judgment is hereby entered in favor of Defendants on those claims. The state law claims are hereby dismissed without prejudice.

IT IS SO ORDERED.

DATE: August 28, 2024        /s/ John R. Adams_____
                             Judge John R. Adams
                             UNITED STATES DISTRICT COURT